**EXHIBIT A**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X
CHANTISE HOGUE,

                            Plaintiff,

          -against-

BOARD OF EDUCATION OF THE CITY SCHOOL
DISTRICT OF THE CITY OF NEW YORK, A/K/A
THE NEW YORK CITY DEPARTMENT OF
EDUCATION, and DAVID FANNING, In His Individual
And Official Capacity as Principal of the A.P. Randolph
High School,

                            Defendants.
------------------------------------------------------------------X

Index No: 150393/2019

**PROPOSED AMENDED COMPLAINT**

       Plaintiff, Chantise Hogue (hereinafter "Ms. Hogue" or "Plaintiff"), by her attorneys, Nesenoff and Miltenberg, LLP, whose offices are located at 363 Seventh Avenue, 5th Floor, New York, New York 10001, alleges upon knowledge with respect to herself, and upon knowledge, information and belief as to all other matters, as follows:

**PRELIMINARY STATEMENT**

       1.      Plaintiff, a dedicated teacher and former dean of the A.P. Randolph High School, has dedicated her life to help shape and build the minds o today's youth within the New York City education system. Despite her efforts, however, Plaintiff, an African-American woman, could not overcome the blatant prejudices and biases that permeated her work environment. Indeed, although she had more than proved her worth as a dean, school teacher, and mentor to her students, Plaintiff was labeled as nothing more than the "token, angry black woman" and subjected to blatant disparate treatment and a toxic work environment on the basis of her race

and skin color. Making matters worse, when Plaintiff attempted to stand up for herself, she was once again pushed down and her complaints swept under the proverbial rug.

2. Accordingly, this is a civil action brought on behalf of Plaintiff against Defendants for race discrimination and retaliation in violation of 42 U.S.C. § 1981, the Fourteenth Amendment of the United States Constitution as guaranteed by 42 U.S.C. § 1983, the New York State Human Rights Law (N.Y. Exec. Law §§ 290 et. seq.) ("SHRL") and the New York City Human Rights Law (N.Y.C. Code §§ 8-107, et. seq.) ("CHRL"), together with any other cause(s) of action which can be reasonably inferred from the facts as set forth herein.

## THE PARTIES

3. Plaintiff is an African-American female, who is a resident of New York County, New York.

4. At all relevant times, Plaintiff worked in New York County, New York.

5. At all relevant times, Plaintiff was an "employee" of Defendants as that term is defined by all applicable Federal, State, and local laws.

6. Defendant Board of Education of The City School District of The City of New York A/K/A The New York City Department Of Education ("Defendant DOE") is a municipal corporation incorporated under the laws of the State of New York, which is in charge of all public schools in the City of New York.

7. Defendant DOE's headquarters are located at 52 Chambers Street, New York, New York 10007.

8. At all times relevant to this complaint, Defendant DOE was Plaintiff's "employer" as that term is defined by all applicable Federal, State, and local laws.

9. Upon information and belief, Defendant David Fanning ("Defendant Fanning" and collectively with Defendant DOE, the "Defendnts") is a resident and domiciliary of the State of New York whose last known business address was A.P. Randolph High School, 443 W. 135th Street, New York, New York 10031 (hereinafter the "School").

10. At all times relevant to this complaint, Defendant Fanning was the Principal of the School and Plaintiff's "employer" as that term is defined by all applicable Federal, State, and local laws/

11. Upon information and belief, the School is an educational facility within the Defendant DOE network of schools.

12. As discussed in detail below, the individually named Defendant endorsed and/or directly participated in the discriminatory and retaliatory conduct perpetrated against Plaintiff.

13. Further, the individually named Defendant, at all times relevant to this complaint, were directly responsible for the terms and conditions of Plaintiff's employment and acted as policymakers with regards to the operations and maintenance of the School.

**JURISDICTION, VENUE, AND CONDITIONS PRECEDENT**

14. This Court has original jurisdiction over Plaintiff's claims pursuant to New York CPLR §§ 301 and 302.

15. Venue is proper in this case pursuant to New York CPLR § 503.

16. On or about October 2, 2017, Plaintiff served a Notice of Claim upon all Defendants. Plaintiff's Notice of Claim was assigned the Claim Number: 2017PI027793.

17. On or about March 16, 2018, Plaintiff was examined under oath pursuant to General Municipal Law §50(h).

18. The present action was being commenced within one year and ninety days of the subject occurrence.

## OPERATIVE FACTS

19. Plaintiff, an educator with over thirteen (13) years' experience, commenced employment at the School in or around the Fall of 2011 as a History Coordinator and the College for Every Student Liaison.

20. Plaintiff quickly proved herself a dedicated, hard-working, and amply capable employee, and garnered the respect of both her peers and her students.

21. At the time of her hire, Plaintiff was supervised by the School's then-Principal, Henry Rubio ("Mr. Rubio").

**Defendant Fanning Becomes Principal at the School**

22. In or around 2011, Defendant Fanning replaced Mr. Rubio as the School's Principal.

23. Upon information and belief, Defendant Fanning is Caucasian.

24. Following Defendant Fanning's ascent to Principal, Plaintiff - an African American woman - saw a marked decline in her work environment and soon found herself the victim of horrendous discrimination by both Defendant Fanning and other high-ranking administrators at the School.

25. Indeed, as principal, Defendant Fanning showed a clear disdain for the School's minority community, going so far as to announce that the minority students would "never amount to anything positive" in their lives and calling them and their families "ghetto".

**Plaintiff Becomes a Dean at the School and**
**Is Treated Less Well than her Caucasian Counterparts**

26. For the 2013-2014 academic school year, Plaintiff became, for the first time, a dean at the School.

27. Notably, Plaintiff was the only African-American dean at the School.

28. As a dean, Ms. Hogue's immediate supervisor was Assistant Principal Rhonda Pekoh ("A.P. Pekoh"). Ms. Hogue was also subordinate to the School's several other Assistant Principals.

29. As a dean, Plaintiff's primary responsibility was to investigate and resolve student disputes at the School.

30. Plaintiff quickly noticed that she was treated less well than her similarly situated non-African American colleagues.

31. By way of example only, Plaintiff's Caucasian were all provided with their own private office space whereas Plaintiff was the only dean not provided *any* office space.

32. Instead, after complaining that she did not have a work space, Plaintiff was forced to share an office with another dean, Ms. Mclean. Notably, Ms. Mclean was the only other African-American dean at the School at the time.

33. Notably, Plaintiff's portion of the office space was vastly inferior as it lacked proper and necessary supplies such as a phone and printer. Indeed, Ms. Mclean was equipped with a phone and printer and all necessary supplies to complete her job duties whereas Plaintiff was deprived of such necessities.

34. Ms. Hogue repeatedly complained to A.P. Pekoh that she was lacking necessary supplies in her shared office, and requested that a printer and phone be installed.

35. In response, A.P. Pekoh told Plaintiff that she would bring it up to Defendant Fanning and would put in a request for the supplies Plaintiff needed. Still, nothing happened and Plaintiff was forced to work in a sub-par office environment.

36. Upon information and belief, Defendant Fanning was responsible for approving or rejecting the requests to provide Ms. Hogue additional office supplies.

37. Plaintiff was eventually allowed to temporarily use another dean's office after he left employment at the School due to allegations of inappropriate behavior. To Plaintiff's surprise, however, this re-assignment was short lived as the other dean eventually returned and Ms. Hogue was again asked to vacate the office and return to working in a shared space.

38. It was not until the following school year (2014-2015) that Plaintiff was even *offered* her own office space in the School's Room 321-A ("Room 321-A").

39. Room 321-A was grossly insufficient, as it had no door window, no outlets to plug any machines or equipment into, and no phone, and therefore posed a safety risk if Plaintiff were in there with an unruly student.

40. Upon information and belief, it is the policy and practice at the School that no faculty member is permitted behind closed doors with a student when there is no window or other outlet to see in and out of the room.

41. Plaintiff expressed her displeasure at being offered Room 321-A due to its substandard conditions and the safety risk the room posed. In response, Defendant Fanning gave Ms. Hogue an ultimatum – take the room or do not have your own office space and continue sharing.

42. Upon information and belief, there were empty offices throughout the School building that Plaintiff could have used as her personal office and that would have been conducive

to her job duties but Defendant Fanning never offered Plaintiff these accommodations. It was either take the unsafe substandard Room 321-A or continue sharing an office without the necessary equipment to perform her job.

43. Further, Plaintiff was frequently let out of updates on the students and ongoing cases whereas her fellow deans were always apprised of new cases and issues. This only served to isolate and ostracize Plaintiff, making it exceedingly difficult to perform her job.

**Defendant Fanning Goes Out of His Way**

<u>**To Make Plaintiff's Work Environment More Difficult**</u>

44. Plaintiff's work environment continued to worsen.

45. Upon her return to the School for the 2014/2015 school year, Defendants instituted a new policy wherein the 'save' room needed to be covered for all periods throughout the day.

46. The 'save' room was a designated room where students who were suspended and could not attend their classes were made to remain. It was also the room where students who were found during a sweep (a sweep was when the deans and administrators would comb the hallways and to find students out of their classrooms without authorization) were sent to remain for the rest of the current period.

47. In an effort to institute this policy, Defendants curiously assigned Plaintiff to oversee the 'save' room for periods 3, 4, 5, 6, and 8.

48. This meant that Plaintiff was restricted from leaving the 'save' room for five periods straight to oversee students with behavioral infractions, which at times put her safety at risk, eat lunch for period 7, and return to the 'save' room for the final period of the school day.

49. Notably, upon information and belief, there were other deans available to cover the 'save' room and relieve Plaintiff throughout the day. Despite this fact, and despite complaints from Plaintiff, Defendants continued to force Plaintiff to cover the 'save' room for nearly the entire day, sometimes even forcing her to miss her lunch.

50. Eventually, in or around the Fall of 2015, Defendants modified Plaintiff's 'save' room schedule and Plaintiff was thereafter assigned to the 'save' room for periods 3, 4, and 6.

51. Despite this modification, Defendant Fanning intentionally made Plaintiff's 'save' room duties especially difficult by ordering 'sweeps' during 6th period. This would result in a rush of students being brought to the 'save' room during the exact times that Plaintiff was on duty.

52. Notably, when questioned why Defendant Fanning called sweeps during 6th period every day, A.P. Pekoh responded that it was Defendant Fanning's "favorite time of day."

**Plaintiff is Deemed the School's Angry Black Woman**

53. Defendants and A.P. Pekoh intentionally and routinely called Plaintiff to deal with the School's most troublesome students, and to handle particularly unsafe situations because, as Defendant Fanning, explained that she was the right person to deal with such situations because no one wanted to deal with "an angry black woman" like her.

54. Defendant Fanning frequently referred to Plaintiff as the token "angry black woman." Defendant Fanning frequently made racially charged statements towards and about Plaintiff, as well as racially derogatory and negative remarks about the School's student body, the majority of which were minorities.

55. Plaintiff complaint about such remarks and their discriminatory intent. Specifically, Plaintiff complained to the School's staff and her superior Assistant Principals,

8

including "Assistant Principal Foster-Ba" that Defendant Fanning used racially charged comments and remarks towards and about her.

56. In addition, Plaintiff complained to Assistant Principal Foster-Ba regarding Defendant Fanning's mistreatment of her as a Black woman and his overall treatment of the minority population – students and teachers alike.

57. However, despite Plaintiff's clear complaints, nothing was ever done to address Defendant Fanning's behavior and, to this day, he continues to engage in such discriminatory actions towards Plaintiff.

**<u>Defendants Demote Plaintiff and Strip Her of Her Deanship</u>**

58. Following the conclusion of the 2016/2017 academic school year, Plaintiff received her schedule for the upcoming year.

59. Upon receipt, Plaintiff noticed that she had been assigned only one teaching class which meant that her deanship, as expected, was going to continue throughout the 2017/2018 school year.

60. Thereafter, however, Plaintiff heard disturbing rumors that Defendant Fanning planned to demote her and strip her of her deanship without cause or adequate notice.

61. Plaintiff did her best to pay no attention to such rumors and was not given any formal notice from Defendants regarding her deanship status throughout the Summer of 2017.

62. On or about August 29, 2017, Plaintiff began receiving repeated phone messages and emails from Defendant Fanning's secretary urging her to speak with Defendant Fanning.

63. On or about September 5, 2017, upon her return for the 2017/2018 academic year, Defendant Fanning met with Plaintiff and informed her that she was being removed as a dean and demoted back to a teacher's position.

9

64. Defendant Fanning gave no adequate justification for this demotion and, upon information and belief, no other dean was demoted for the 2017/2018 academic year.

65. Following her removal as a Dean, Defendants have continued to target Plaintiff.

66. By way of example only, to date Defendant Fanning has continued to diminish Plaintiff's role, going so far as to take away a college course from her during, significantly impacting Plaintiff's revenue.

### **DEFENDANT DOE'S LIABILITY AS A MUNICIPALITY**

67. Defendant Doe is liable for its employees' deprivation of Plaintiff's rights because such acts were taken in accordance with the Defendant DOE's custom and/or practice of discriminating and/or selectively treating individuals; these practices were so persistent and widespread that they constituted acquiescence of policymakers; and the individual policymaker(s) directly participated in and/or tacitly condoned the discrimination and retaliation to which Plaintiff was subjected.

68. Indeed, Defendant DOE has been on notice of the discriminatory and retaliatory practices occurring at the School as several of Plaintiff's fellow minority colleagues have similarly spoken out against the administration for its discriminatory and retaliatory practices, including speaking out directly against Defendant Fanning for race discrimination and retaliation.

69. Such individuals include fellow School staff members Melissa Bastian, Victor Rivera, Delroy Giscombe, and Sonia Burke, who all have complained about discrimination and/or retaliation at the School.

### **AS AND FOR THE FIRST CAUSE OF ACTION**
*(Race Discrimination in violation of 42 U.S.C. § 1981, the Fourteenth Amendment of the United States Constitution as guaranteed by 42 U.S.C. § 1983, the SHRL, and the CHRL)*

70. Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

71. Plaintiff is an African American female and is therefore a member of a protected class.

72. Plaintiff was qualified to work as an employee for Defendants and she satisfactorily performed the duties required by the position she held with Defendants.

73. As set forth in detail above and herein, Defendants subjected Plaintiff to disparate treatment and/or discipline and an atmosphere of adverse employment actions and decisions because of her race.

74. As set forth in detail herein and above, Defendants subjected Plaintiff to a hostile work environment on the basis of her race.

75. The race discrimination that Plaintiff suffered severely affected the terms and conditions of her employment.

76. By reason of Defendants' repeated violations of Plaintiff's statutory and constitutional rights, Plaintiff has suffered a loss of monetary and other benefits associated with her employment.

77. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered emotional distress.

78. Accordingly, Defendants discriminated against Plaintiff on the basis of her race in violation of 42 U.S.C. § 1981, the Fourteenth Amendment of the United States Constitution as guaranteed by 42 U.S.C. § 1983, the SHRL, and the CHRL.

79. As a result of Defendants' violations of the aforementioned Federal, State, and local laws, Plaintiff has been damaged in an amount to be determined at trial.

## AS AND FOR THE SECOND CAUSE OF ACTION
*(Retaliation in violation of 42 U.S.C. § 1981, the Fourteenth Amendment of the United States Constitution as guaranteed by 42 U.S.C. § 1983, the SHRL, and the CHRL)*

80. Plaintiff repeats and re-alleges each and every fact as set forth above, herein.

81. Plaintiff is an African American female and is therefore a member of a protected class.

82. Plaintiff was qualified to work as an employee for Defendants and she satisfactorily performed the duties required by the position she held with Defendants/

83. As set forth in detail above, Defendants subjected Plaintiff to discrimination, disparate treatment, a hostile work environment, and an atmosphere of adverse employment actions and decisions because of her race in violation of Plaintiff's known statutory and constitutional rights.

84. Plaintiff repeatedly complained to Defendants, including to her supervisors, regarding the discrimination she was subjected to during her employment and the discrimination she observed other minority individuals experiencing.

85. In response to Plaintiff's complaint, Defendants subjected Plaintiff to a series of adverse employment actions including, but not limited to a worsening hostile work environment and an unlawful demotion.

86. As a direct and proximate result of said unlawful employment practices and disregard for Plaintiff's rights and sensibilities, Plaintiff lost substantial income and benefits associated with her employment.

87. As a further direct and proximate result of said unlawful employment practices, Plaintiff has suffered emotional distress.

88. Accordingly, Defendants retaliation against Plaintiff in violation of 42 U.S.C. § 1981, the Fourteenth Amendment of the United States Constitution as guaranteed by 42 U.S.C. § 1983, the SHRL, and the CHRL.

89. As a result of Defendants' violations of the aforementioned Federal, State, and local laws, Plaintiff has been damaged in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

90. Pursuant to CPLR 4102, Plaintiff demands a trial by jury on all claims

## PRAYER FOR RELIEF

**WHEREFORE,** for the foregoing reasons, Plaintiff seeks a judgment against Defendants as follows:

(i) A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned Federal, New York State and New York City laws;

(ii) Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with Defendants, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

(iii) An order restraining Defendants from any retaliation against Plaintiff for participation in any form in this litigation;

(iv) All compensatory damages that Plaintiff has sustained as a result of the Defendants' unlawful discriminatory conduct, including back pay, front pay, damages to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment, emotional distress damages, general and special damages for lost

compensation and employee benefits that she would have received but for the Defendants' conduct, and any other out-of-pocket losses that Plaintiff has incurred or will incur;

    (v)    Punitive and/or exemplary damages against Defendant Fanning;

    (vi)    Statutory pre- and post-judgment interest on all sums awarded;

    (vii)    An award of costs and attorneys' fees; and

    (viii)    Any other relief the Court finds just and proper.

Dated: New York, New York          **NESENOFF & MILTENBERG, LLP**
      August 14, 2018                        *Attorneys for Plaintiff*

                                                  By: __/s/_____
                                                  **Andrew T. Miltenberg, Esq.**
                                                  **Gabrielle M. Vinci, Esq.**
                                                  **363 Seventh Avenue, Fifth Floor**
                                                  **New York, New York 10001**
                                                  **(212) 736-4500**